JOHN F. SPENCE ET AL. v. E. B. GRANGER ET AL.

(Filed 22 February, 1933.)

**Drainage Districts B d—Under the facts of this case original assessment was not bar to appellants' motion to vacate assessment.**

In a proceeding to establish a "jury ditch," C. S., 5275, *et seq.,* an assessment was made against certain landowners which was confirmed by the clerk. Thereafter an order was made for a supplemental assessment to meet a deficit in the former assessment. The supplemental assessment was set aside as to the appellants upon their motion entered on the ground that they had not been given notice thereof, and no appeal was taken from the judge's order confirming the clerk's order vacating the supplemental assessment, and there was an affidavit filed in the record that it was agreed by the parties that the appellants' land did not drain into the "jury ditch," and the appellants voluntarily agreed to an assessment for the construction of an "intercept ditch." The appellants paid certain assessments levied under the original assessment thinking that such amounts were for the "intercept ditch." Thereafter they made a motion to vacate the original assessment, which motion was allowed by the clerk upon findings that their lands did not drain into the "jury ditch," and that they did not have notice of the supplemental assessment. Upon appeal the trial court reversed the clerk's order, holding that the original assessment was *res judicata,* and the parties appealed to the Supreme Court: *Held,* the statutory procedure is analogous to the general drainage law, and its provisions are applicable, and the proceedings are regarded as kept alive for further orders without being retained on the docket, and the original assessment did not constitute a bar to the motion to vacate, and the assessment was properly set aside on the facts found.

APPEAL by certain defendants, movants from *Hill, J.,* at October Term, 1932, of PASQUOTANK. Reversed.

*McMullan & McMullan for movants, appellants.*
*Thompson & Wilson for appellees.*

CLARKSON, J. The summons in this proceeding was issued 29 August, 1927, and served on the appellants 7 September, 1927.

This is a proceeding brought by plaintiffs against defendants to establish a "jury ditch" about four and a half (4½) miles long, draining into Pasquotank River, known as "Shepard Ditch," under C. S., 5275. C. S., 5276, sets out the procedure. C. S., 5277, costs of repairs enforced by judgments. C. S., 5279, provides that the dominant owner can repair by giving servient owner three days notice. C. S., 5280, canal for seven years necessity presumed and procedure provided for maintaining same. Public Laws, 1931, chap. 227, among other things makes a new section 5280(a) and is an enabling act "to make other and further assessments for the costs of establishment, construction and expense" when former provisions are insufficient.

Some of the defendants, appellants, in answer to plaintiffs' petition, among other things, say: "That all of the lands of the above named defendants drain into a ditch called the "Eight Foot Ditch" or into ditches running parallel therewith; from the opposite side of the road running between these lands and the Shepherd Ditch." . . . The above answering defendants further answering the petition say for themselves, that their lands, nor any part of them drain into said Shepherd Ditch, but on the other hand are shut off from the same by a 20-foot road, and all ditches that could lead into said Shepherd Ditch, from their said lands or any of them are now, and have been dammed off from said Shepherd Ditch for over twenty-five years. . . . That they have kept the above referred to and mentioned Eight Foot Ditch open as a common drain for their lands, as well as other ditches running parallel to said Eight Foot Ditch, and that all of said ditches are independent of said Shepherd Ditch, and have been, for a longer time, than any one now living can remember; and that all of said ditches drain into a swamp opening into Pasquotank River. . . . That they have been keeping and are now keeping said Eight Foot Ditch open as a common drainway for their lands; and to make them come into the Shepherd Ditch would not only work a great hardship upon them, but would cause them a great expense, for which they could not get any benefit at all."

On 9 February, 1928, jurors were regularly appointed. They rendered their report 22 May, 1929, making assessments. On 25 June, 1929, judgment and confirmation was entered by the clerk. On 17 July, 1929, the clerk made an order appointing certain commissioners to carry out the former judgment. Thereafter two of the jurors made a report to the clerk that "it is necessary that an amount be further assessed against the

land embraced in said Jury Ditch proceeding that will aggregate an amount approximately eighteen hundred dollars ($1,800)."

The clerk made an order as follows: "It appearing to the court upon investigation that the former report of the jurors in the above entitled proceeding has produced an amount insufficient to pay off and discharge the cost and expense of the work done in the establishment of the Tadmore Jury-Ditches, established under this proceeding: Therefore, by authority of the laws of North Carolina as contained in chapter 94 of the Consolidated Statutes and as amended by chapter 227 of the Public Laws of North Carolina, 1931, it being found by the court as a fact that the deficiency exists to the extent of approximately eighteen hundred dollars ($1,800). It is therefore ordered, that the jurors in the proceeding meet and forthwith make a supplementary report upon an equitable and just basis and proportion as made in the former report, sufficient in amount, to cover said deficiency, being approximately eighteen hundred dollars ($1,800), as aforesaid. This 31 October, 1931. That thereafter, to wit, on 14 November, 1931, the jurors, pursuant to the order entered by the Superior Court clerk, submitted a report of their supplemental assessment, with a schedule assessing against each landowner an increase of 40 per cent over his former assessment. Thereafter, to wit, on 15 January, 1932, said supplemental report was confirmed by the clerk. Thereafter, in apt time, these movants or appellants, filed a motion in the cause before the clerk to vacate and set aside said supplemental assessment."

Among the grounds: "That said report, said order and said judgment were each and all entered without notice to movants."

The clerk who had rendered the judgment without notice, on 19 February, 1932, vacated and set aside the judgment. An appeal was taken to the Superior Court and Judge F. A. Daniels, on 19 February, 1932, made the following order: "The court being of the opinion that said judgment in the above entitled cause ought to be vacated and set aside and that the order of the clerk of Superior Court this day entered should be affirmed, doth—upon motion of attorneys for movants, order, adjudge and decree that the order this day entered by the clerk of Superior Court setting aside the judgment confirming the supplemental report heretofore filed herein be, and the same hereby is, in all respects affirmed."

The record discloses no exception or appeal from the judgment. The record has an affidavit set forth, dated 16 February, 1932, signed by J. B. Leigh, attorney for the appellants, in which it is alleged that at a meeting of "all parties concerned being represented" that it was agreed that the lands of appellants did not drain from the jury ditch in ques-

tion and that they were to dig an "intercept ditch" and pay for same *pro tanto,* which they did. "It was expressly agreed that these said parties aforementioned should be forever excluded from the provisions of the jury ditch and that said agreement was not put on record due to the inadvertence of the parties and of this affiant in believing the matter to be forever closed as regards assessments."

The appellants filed an affidavit signed by all of them confirming the affidavit of Leigh. Further "They, and each of them, prior to the rendition of said judgment had compromised and agreed with the said Montgomery (W. S. Montgomery, jury ditch contractor) as per the affidavit of J. B. Leigh, Esq., duly filed in this case, and that they, and each of them, have paid to the said Montgomery the various amounts agreed upon in said compromise; that none of them were served with any notice of the hearing of the matter in the Superior Court, or any other court, nor did they, or any one of them see any publication of any notice in the press or otherwise until it was reported afterwards that judgment had been rendered against their lands."

On 5 September, 1932, the clerk who had theretofore passed on all these matters, on exceptions to the supplemental report of the jurors, found certain facts. The clerk found all the facts for appellants as they contended for on this appeal. No notice given as to order appointing the jurors who "filed a supplemental assessment of 40 per cent against all of the said parties appearing on the original assessment roll," etc. Also the contention made by Leigh and appellants as to "intercept ditch," that the assessment in the original judgment was "tentative assessment," and "after hearing the evidence of all interested parties the court doth make this further finding of fact: First, that the lands of the said parties hereinbefore enumerated were amply drained by private ditches and were not benefited by the construction of the Shepherd Jury Ditch, and second, that the said parties, when called upon to pay the original assessment levied against them could not have reasonably known that the amounts so contributed by them respectively, after their voluntary agreement to contribute, were included in the assessment roll of the Shepherd Jury Ditch, but reasonably believed that the amounts so paid were not included in the assessment rolls relative to the said Shepherd Jury Ditch, but that they were placed there to cover their voluntary contributions for the construction of the said intercept ditch and in discharge of this obligation only were they paid. . . . Said judgment be, and same is hereby, vacated and set aside and that the names of said parties be stricken from the assessment rolls relative to the Shepherd Jury Ditch. . . . To the foregoing judgment, the receiver, N. S. Leary, and other interested parties, excepts and appeals to the judge of Superior Court."

The court below rendered the following judgment: "The court, upon the entire record in the cause, and after argument of counsel, being of the opinion that the matters so set up and relied upon and all issues and question therein involved have heretofore been finally adjudicated by orders and decrees entered herein, the said excepting parties then being parties to the cause, and no appeal having been taken, and that such exception cannot now be considered by the court: it is, therefore, ordered, decreed and adjudged by the court that the aforesaid judgment of the clerk, dated 5 September, 1932, be and the same is hereby reversed and stricken out, that the aforesaid exception to said supplemental report of 14 November, 1931, be and the same is hereby overruled, and that said supplemental report be and the same is hereby in all respects confirmed, and that as to those parties or lands against which additional or supplemental assessments of forty per cent have been made by the jurors, judgment is hereby entered against them accordingly."

The only exception and assignment of error made by movants or appellants, is as follows: "That they except to the apparent reassessment levied against them by said jurors, for the reason that their lands do not drain from the Shepherd Jury Ditch; that it was so understood at the time of the original assessment as is stated in the affidavit of J. B. Leigh, heretofore filed, which is incorporated herein and by reference made a part of this paragraph; and that the costs placed against them on the original assessment were for the cost of an intercept ditch for which they voluntarily agreed to pay." We think this exception and assignment of error well taken. Although this proceeding is under the statute establishing a "jury ditch," yet the principle under the general drainage act is analogous and applicable.

In *Staton v. Staton*, 148 N. C., at p. 490, we find: "The plaintiff herein instituted a proceeding in 1885, under the drainage act (now Revisal, chap. 88)—(Vol. 2, C. S., 1919, chap. 94, Drainage)—for the right to drain into Barnes Canal. Commissioners were appointed, the rights and duties of the several parties determined and the amount each should pay assessed. The report was confirmed 30 January, 1886. This is a subsidiary proceeding begun in the clerk's court, which sets out that repairs to the canal are needed, that some of the tracts have changed hands and that one tract in particular has been partitioned, and asking that the amount assessed against that tract be divided and assessed in proper proportions against each of the partitioners. This is in effect a motion in the cause. From the nature of the proceeding, the judgment in 1886 is not a final judgment, conclusive of the rights of the parties for all time, as in a litigated matter. But it is a proceeding *in rem,* which can be brought forward from time to time, upon notice to all

the parties to be affected, for orders in the cause, dividing (as here sought) the amount to be paid by each of the new tracts into which a former tract has been divided by partition or by sale; to amend the assessments, when for any cause the amount previously assessed should be increased or diminished, for repairs; for enlarging and deepening the canal or for other purposes, or to extend the canal and bring in other parties. It is a flexible proceeding, and to be modified and moulded by decrees from time to time to promote the objects of the proceeding. The whole matter remains in the control of the court. It is not necessary, however, to keep such cases on the docket, but they can be brought forward from time to time, upon notice to the parties, upon supplementary petition filed therein, and further decrees made to conform to the exigencies and changes which may arise. . . . These proceedings are not highly technical, but are intended to be inexpensive and to be moulded from time to time, by the orders of the court, as may best promote the beneficial results contemplated by the statute." *Drainage District v. Cahoon,* 193 N. C., 326.

In the present case there *was no notice of the supplemental order* assessing against each landowner an increase of 40 per cent over the former assessment. As in the *Staton case supra, notice was vital.* Then again, there was no exception or appeal from Judge Daniels' order confirming the clerk who vacated and set aside his former order. The judgment below is

Reversed.